UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANKIE HARRIS,

       Plaintiff,

v.                   Case No. 6:14-CV-0664 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.
_____

APPEARANCES:             OF COUNSEL:

FRANKIE HARRIS, PRO SE
932 Mary St.
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.      SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

   Currently before the Court, in this Social Security action filed by Frankie Harris ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 18, 20.)[1] For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

---

  [1]  Plaintiff commenced this action pro se, however, he was represented by counsel at the administrative hearing and in requesting review from the Appeals Council. Plaintiff filed what was construed as a Memorandum of Law at Dkt. No. 20.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 8, 1982. (T. 61.) He completed 10th grade. (T. 141.) Generally, Plaintiff's alleged disability consists of mental illness, memory loss, depression, anxiety, and migraine headaches. (T. 140.) His alleged disability onset date is January 1, 1997. (T. 135.) He has no past relevant work. (T. 141.)

### B. Procedural History

On October 19, 2010, Plaintiff applied Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 2, 2011, Plaintiff appeared before the ALJ, Robert C. Dorf. (T. 54-71.) On November 18, 2011, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 26-41.) On June 18, 2013, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 31-37.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 19, 2010, the date of the application. (T. 31.) Second, the ALJ found Plaintiff had the severe impairments of depression and mood disorder. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments located in

20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 32.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "medium work," except he could perform "simple repetitive tasks at a low stress level meaning decision making [was] not required." (T. 33.)[2] Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T. 36-37.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff appears pro se and filed a one page letter addressed to the Social Security Administration stating he is disabled and asking for assistance in his claim. (Dkt. No. 20.) In the absence of a Plaintiff's Brief, the Court assumes that the Plaintiff generally alleges that the ALJ committed legal error and that his decision was not supported by substantial evidence. *Meglino v. Comm'r,* 5:06-CV-968, 2008 WL 2097221, at *2 (N.D.N.Y. May, 19, 2008) (where pro se plaintiff failed to file a brief, the court assumed plaintiff alleged lack of substantial evidence and ALJ error). Plaintiff did have assistance of counsel when he requested review from the AC. In his request for review, Plaintiff made three arguments. (T. 170-173.) First, Plaintiff argued the ALJ improperly evaluated Plaintiff's RFC; specifically, he failed to account for effects of his severe mental impairment and the ALJ instead relied on his own lay interpretation of the evidence. (T. 170-171.) Second, Plaintiff argued the ALJ improperly evaluated the opinion evidence of Dr. Goldburt. (T. 172.) Third, Plaintiff argues the ALJ failed to obtain

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. § 404.967(c).

3

testimony from a vocational expert ("VE"). (*Id.*) The arguments made to the AC will also be addressed by this Court.

### B. Defendant's Arguments

Defendant makes essentially three arguments. First, Defendant argues substantial evidence supported the ALJ's finding that Plaintiff had the RFC to perform medium work limited to simple repetitive tasks with no decision making required. (Dkt. No. 18 at 12-16 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ correctly found that Plaintiff's subjective complaints were not credible to the extent alleged. (*Id.* at 16-19.) Third, and lastly, Defendant argues the ALJ properly found that Plaintiff was able to perform work that exists in significant numbers in the national economy. (*Id.* at 19-20.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

4

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §

416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.   ANALYSIS

### A.   Whether Substantial Evidence Supports the ALJ's RFC Finding.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 18 at 12-16 [Def.'s Mem. of Law].)  The Court adds the following analysis.

Defendant argues substantial evidence supports the ALJ's exertional portion of his RFC determination. (Dkt. No. 18 at 12-13 [Def.'s Mem. of Law].) This Court agrees.

The ALJ provided "great weight" to the consultative examiner, Aurelio Salon, M.D. in making his RFC determination. Dr. Salon examined Plaintiff in December of 2010. (T. 261-265.) Upon examination, Plaintiff appeared to be in no acute distress, had

6

a normal gait, could walk on heels/toes, used no assistive devices, could get on and off the exam table without assistance, and was able to raise from his chair without difficulty. (T. 262.) His musculoskeletal exam showed no limitations; he had full range of motion in his cervical and lumbar spine; full range of motion in his upper and lower extremities; and his joints were stable and non-tender. (T. 263.)

In his medical source statement, Dr. Salon opined based on his exam and Plaintiff's self-reported history of seizure, Plaintiff had no physical limitations on his ability to sit. (T. 264.) Dr. Salon stated Plaintiff's ability to stand, climb, push, pull, and carry heavy objects was restricted due to his reports of seizures. (*Id.*) Further, he opined Plaintiff should avoid driving, operating heavy machinery and known respiratory irritants. (*Id.*)

Plaintiff argued to the AC, the ALJ failed to include Dr. Salon's limitations in his RFC. (T. 171.) However, the ALJ limits Plaintiff exertionally to medium work, which is consistent not only with Dr. Salon's limitations, but with the other medical evidence in the record. Overall, the ALJ's RFC is supported by objective medical imaging and emergency room visits, together with Dr. Salon's medical source statement.

Regarding Plaintiff's reports of seizures, an EEG performed on December 1, 2010 was normal with no evidence of epileptiform activity. (T. 408.) Further, a brain CT scan and MRI were also normal. (T. 235, 408-409.) Plaintiff sought emergency room care for complaints of arm pain, knee/ankle pain and head pain. (T. 230, 231, 235, 243.) Plaintiff not admitted, medical imaging was not ordered, and he was given medication and discharged home. (T. 230.) Regarding his knee/ankle pain he was observed to be stable and ambulatory and also discharged home. (T. 233.) A CT was ordered for his

7

complaints of head pain, but results were normal. (T. 235.) He was noted to be stable and discharged home with instructions to follow up with his primary health care provider. (T. 235-236.) Regarding his second ER visit due to "head pain," he was directed to have an MRI conducted at the Ryan Center. (T. 243.) However, Plaintiff did not have an MRI as he was discharged from the Ryan Center for verbally abusing a resident and threatening her. (T. 250.) An MRI was later conducted at St. Lukes-Roosevelt Hospital Center and results were normal. (T. 408.)

Therefore, Dr. Salon's opinion was consistent with the record and his examination of Plaintiff. The ALJ properly afforded Dr. Salon's opinion "great weight," and the exertional limitations reflected in his RFC analysis are supported by substantial evidence. *See Monguer v. Heckler*, 722 F.3d 1033, 1039 (2d Cir. 1983) (a consultative examiner's opinion can constitute substantial evidence in support of an ALJ's determination).

The record is void of treatment for asthma. Plaintiff indicated he did not take medication for asthma. (T. 149.) Dr. Salon, based on Plaintiff's self-reporting, opined he should avoid known respiratory irritants. (T. 264.) Regarding respiratory irritants, "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." SSR 85-15 (S.S.A. 1985). Regarding his alleged seizures, Plaintiff's mother indicated that he was never diagnosed with seizures, nor does the record include a diagnosis of seizure. (T. 151.) SSR 85-15 also states, "[a] person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example

of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." SSR 85-15. Therefore, the ALJ did not err in failing to expressly limit Plaintiff's RFC regarding respiratory irritants and his alleged seizure disorder, as any limitation would have minimal effect on the work Plaintiff could perform and the medical evidence fails to support additional limitations.

Defendant further argues the non-exertional portion of the ALJ's RFC analysis is supported by substantial evidence. (Dkt. No. 18 at 13-16 [Def.'s Mem. of Law].) Plaintiff argues in his brief to the AC: 1) the ALJ failed to include Plaintiff's "moderate limitations" in social functioning in his RFC analysis, 2) the ALJ failed to include all of the effects of Plaintiff's mental impairments in his RFC analysis, and 3) the ALJ relied on his own lay interpretation of the medical evidence. (T. 171-172.)

The ALJ's determination that Plaintiff could perform "simple repetitive tasks at a low stress level meaning decision making is not required" is supported by substantial evidence. (T. 33.)

Haruyo Fujiwaki, Ph.D. performed a consultative exam in December of 2010. (T. 256-260.) Dr. Fujiwaki opined Plaintiff's attention and concentration were mildly impaired. (T. 258.) He further observed Plaintiff's recent and remote memory were mildly impaired. (*Id.*) In a medical source statement, Dr. Fujiwaki opined Plaintiff was capable of understanding simple directions and instructions; capable of simple tasks; would have some difficulty maintaining attention and concentration; would be able to maintain a regular schedule; would be able to learn new tasks with extended time; would be able to perform complex tasks with difficulty and would need supervision;

could make some simple decisions; may have difficulty relating with others and dealing with stress. (T. 259.) The ALJ afforded Dr. Fujiwaki "great weight." (T. 36.)

Contrary to Plaintiff's argument to the AC, the ALJ's RFC does encompass the limitations imposed by Dr. Fujiwaki because "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. Further, unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people." *Id*. Therefore, Plaintiff's difficulty dealing with others is already accounted for in the very nature of unskilled work. The ALJ properly evaluated the medical opinion of Dr. Fujiwaki and his RFC determination reflects Dr. Fujiwaki's limitations.

The ALJ afforded "controlling weight" to Plaintiff's treating sources at Kings County Hospital Center and St. Mark's Place Institute for Mental Health ("St. Mark's"). (T. 35.)[3] The ALJ afforded "reduced weight" to Kherma Goldburt, M.D. with St. Mark's, reasoning her treatment notes were inconsistent with the alleged limitations she imposed. (*Id.*) Staff at St. Mark's noted symptoms of depression, agitations and frustration; however, noted Plaintiff was overall stable. (T. 268.) He was diagnosed with mood disorder and prescribed Diazepam. (T. 267.) He was able to perform activities of daily living (T. 268.) In October 2010 Plaintiff was described as having a restricted affect (T. 274.) Plaintiff reported he felt better and his sleep improved. (T. 275.) In November of 2010 Plaintiff's mood was dysphoric and his affect labile. (T. 276.) He reported his

---

[3] The decision, and Defendant's Brief, refer to the center as "St. Mary's Place Institute for Mental Health;" however, the record is from "St. Mark's."

10

sleep, energy level, and appetite were "o.k." (T. 276.) In December Plaintiff complained of continued feelings of dizziness and "outbursts." (T. 278.) Dr. Goldburt noted Plaintiff's mood was dysphoric and anxious, and he had a restricted affect. (*Id.*)

In November of 2010 Dr. Goldburt completed a "Treating Physician Wellness Plan Report." (T. 322-324.) Therein, Dr. Goldburt opined Plaintiff would be unable to work for at least twelve months. (T. 324.) She further stated Plaintiff would be precluded from work based on his allegations of a head injury. (*Id.*) She indicated neurological testing was recommended. (*Id.*) On February 7, 2011, Dr. Golburt stated Plaintiff's memory was impaired, but he was oriented and able to perform serial sevens. (T. 412.) Dr. Goldburt opined Plaintiff had "marked" limitations in his ability to understand, remember, and carry out instructions. (T. 415.) She further opined he had "marked" limitations in his ability to interact appropriately with co-workers, supervisors, and the public, as well as respond appropriately to changes in a routine work setting. (T. 416.)

A treating physician's opinion is entitled to controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). ALJ afforded Dr. Goldburt's opinion proper weight as it is not supported by her treatment notes or the objective medical evidence in the record as previously discussed. Specifically, Dr. Golburt's limitations are not supported by consultative examiner Dr. Fujiwaki, who found only mild functional limitations. (T. 259.) Other mental health treatment notes indicated Plaintiff had only mild limitations in his ability to follow work rules, accept supervision, and adapt to work stress. (T. 320.) Treatment notes also indicated moderate limitations in Plaintiff's ability to maintain concentration. (*Id.*)

11

Therefore, substantial evidence supports the ALJ's RFC analysis regarding Plaintiff's non-exertional mental limitations.

## B.      Whether the ALJ Properly Evaluated Plaintiff Credibility.

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 18 at 16-18 [Def.'s Mem. of Law]).  The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992).  However, the ALJ  "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood,* 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the

> objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Here, the ALJ determined Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were "not credible to the extent they [were] inconsistent with the [RFC] assessment." (T. 35.)

To be sure, although a "[plaintiff's] credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." *Gehm v. Astrue*, 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); *see also Patterson v. Astrue*, 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013) ("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination."). Courts have concluded that despite this language, an ALJ's credibility determination may still be proper, if the ALJ provided a detailed discussion of Plaintiff's credibility "explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270. Further, it is the function of the

ALJ, not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the plaintiff. *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982).

Although the ALJ improperly concluded the Plaintiff statements were not credible because they were inconsistent with his RFC determination, the ALJ did provide a discussion which allowed this Court to determine the legitimate reasons for the ALJ's disbelief. The ALJ properly evaluated Plaintiff's testimony, which was contradicted by medical findings or was internally inconsistent. The ALJ also provided a detailed summation and discussion of the medical evidence in the record. (T. 32-35.) Further, as outlined above, the ALJ's RFC determination was consistent with the findings of Dr. Salon, Dr. Fujiwaki, and objective medical evidence.

Overall, Plaintiff alleged he was unable to work due to almost non-stop shaking, or tremors, in his head and body. However, as the ALJ addressed in his decision, Plaintiff's testimony contradicted his allegations of disability. At the hearing he testified that he could walk 100 city blocks, which is approximately one mile. (T. 67.) He further testified he could lift 100 pounds, worked out daily, and could do 500 push-ups. (*Id.*) Plaintiff stated he was experiencing tremors during the hearing; however, the ALJ noted for the record that no shaking was visible. (T. 69.) Socially, Plaintiff had good familial relations, attended his medical appointments and went out alone, although he did get lost occasionally. (T. 32.) Plaintiff testified he lived with his mother, niece, daughter, and daughter's mothers; however, he did not participate in their care. (T. 62.)

In Plaintiff's Disability Report he indicated he was unable to conduct personal care due to shaking, unable to walk more than two city blocks due to shaking, and had

no social activities due to shaking. (T. 163.) However, this testimony is inconsistent with Plaintiff's hearing testimony and the objective physical medical reports in the record.

Therefore, given the medical evidence and Plaintiff's testimony, the ALJ properly evaluated Plaintiff's credibility and properly determined Plaintiff's statements were not credible.

### C. Whether the ALJ Properly Found Plaintiff Was Able to Perform Work that Exists in Significant Numbers in the National Economy.

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18 at 19 [Def.'s Mem. of Law]). The Court adds the following analysis.

As discussed in Part IV.A and B, the ALJ's RFC analysis was supported by substantial evidence. Further, the ALJ conducted a proper credibility analysis. Therefore, considering Plaintiff's RFC, age, education, and work experience at step five, the ALJ properly found Plaintiff not disabled. (T. 36-37), *see* 20 C.F.R. § 416.920(f).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 1, 2015
Syracuse, NY

Glenn T. Suddaby
U.S. District Judge